# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM HOMER,** | : | **CIVIL NO. 3:17-cv-1279** |
| | : | |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **MARK GARMAN, PA STATE** | : | |
| **ATTORNEY GENERAL,** | : | |
| | : | |
| **Respondents** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Adam Homer ("Homer") initiated the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, on July 20, 2017, arguing that his petition is subject to the fundamental miscarriage of justice exception to the Antiterrorism and Effective Death Penalty statute of limitations ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See 28 U.S.C. § 2244(d) (1). (Doc. 1). On August 11, 2017, an Order (Doc. 6) issued directing Respondents to submit a memorandum concerning the timeliness of the petition. Respondents filed a timely Response on August 22, 2017. (Doc. 9). Homer filed his Traverse on September 5, 2017. (Doc. 10). Petitioner has also submitted a number of supplements and addendums. (Docs. 14, 17, 18, 19, 21, 24, 26, 27).

On November 16, 2017, an Order (Doc. 13) issued staying the case and affording Petitioner the opportunity to return to state court. Pending are Petitioner's motions (Docs. 22, 32) to lift the stay and other miscellaneous motions (Docs. 25, 30). Petitioner's motions (Docs. 22, 32) to lift the stay will be granted and, for the reasons set

forth below, the petition will be dismissed as untimely. The miscellaneous motions (Docs. 25, 30) will be denied.

## I.   Background

### A.   State Procedural Background

On October 8, 2013, Homer pled guilty to Murder and Aggravated Assault in Court of Common Please criminal case CP-22-CR-0005565-2012, of Michael Snyder. (Doc. 9, p. 15). He was sentenced to a term of incarceration of fifteen to thirty years on the Murder charge and a five to ten-year prison term for Aggravated Assault. (Id.) Homer did not pursue a direct appeal. (Id. at 15, 16).

On February 6, 2015, Homer filed a "Petition for Modification of Sentence *Nunc Pro Tunc*," which the trial court construed as a petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 9, p. 16). On September 11, 2015, the PCRA Court denied the petition. (Id. at 18). Homer did not pursue an appeal. Instead, three days later, he filed a Second PCRA. (Id.) ON March 24, 2016, the PCRA Court denied the Second PCRA. (Id. at 19). Homer appealed. (Id.) On August 19, 2016, the Superior Court dismissed the appeal for failure to file a brief. (Id. at 20).

On May 3, 2017, Homer sought leave to file a direct appeal. (Id. at 21, 22). The trial court dismissed the petition on July 25, 2017. (Id. at 23).

On August 21, 2017, Homer filed and "Amended Petition under the Post Conviction Relief Act." (Id.) The PCRA Court dismissed the petition on August 24, 2017. See https://ujsportal.pacourts.us/DocketSheets.

On January 2, 2018, Homer filed an "Application to Expedite State Exhaustion to Federal Court to Vacate." (Id.)  On January 9, 2018, the PCRA Court issued an Order denying the motion because there was no active PCRA petition pending.  (Id.)

## II.    Discussion

### A.    Stay

The instant petition was filed on July 17, 2017.  Upon preliminary review, see R. Governing § 2254 Cases R. 4, because the Court determined that the petition may be barred by the statute of limitations, see United States v. Bendolph, 409 F.3d 155, 169 (3d Cir. 2005) (en banc) (holding that district courts may sua sponte raise AEDPA's one-year statute of limitations, provided that the petitioner is provided with notice and an opportunity to respond) set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Respondents were directed to file a response concerning the timeliness of the petition and Petitioner was afforded the opportunity to file a reply.  (Doc. 6).  On August 3, 2017, a response was filed requesting that the petition be denied as untimely. (Doc. 9).  Homer filed a Traverse on September 5, 2017.  (Doc. 10).  Based on review of the electronic docket submitted by Respondents, it appeared that there were still matters pending in the state court.  As such, the Court issued an Order (Doc. 13) staying the matter.  Homer now seeks to lift the stay based on completion of state court remedies. The stay will be lifted and as noted supra, the petition will be dismissed based on untimeliness.

**B.    Timeliness**

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A petition filed under § 2254 must be timely filed under the stringent standards set forth in the AEDPA.  See 28 U.S.C. § 2244(d) (1).  Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999).  Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired.  See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001).

Homer was sentenced on October 8, 2013.  Under the plain terms of 28 U.S.C. § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired.  See Nara, 264 F.3d at 314.  His time

for pursuing a direct appeal expired on November 7, 2013, at which time his judgment became final. The one-year period for the statute of limitations commenced running as of that date. Hence, the federal petition, which was filed on July 21, 2017, is patently untimely. However, the Court's analysis does not end here. The Court must consider the impact of both statutory and equitable tolling as well as the fundamental miscarriage of justice exception.

      1.   <u>Statutory Tolling</u>

Section 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations began running on November 7, 2013, and expired on November 7, 2014. Homer filed his first PCRA petition on February 6, 2015, ninety-one days after the expiration of the statute of limitations. A PCRA petition does not toll an expired statute of limitations. <u>See</u> <u>Long v. Wilson</u>, 393 F.3d 390, 395 (3d Cir. 2004) (finding that petitioner's untimely PCRA petition did not statutorily toll the statute of limitations because, <i>inter alia</i>, "the limitations period had already run when it was filed"). An untimely PCRA petition is not "properly filed" and, therefore, does not toll the statute of limitations. <u>See</u> <u>Pace v. Diguglielmo</u>, 544 U.S. 408, 417 (2005) (holding that "[b]ecause the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2254(d)(2)."). <u>See also</u> <u>Merritt v. Blaine</u>, 326 F.3d 157, 167–68 (3d Cir. 2003). Consequently, the AEDPA statute of limitations is not subject to statutory tolling.

2. Equitable Tolling

"Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003). Generally, a litigant seeking equitable tolling must establish the following two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418.

With respect to the diligent pursuit of rights, petitioner must demonstrate that he or she exercised reasonable diligence in investigating and bringing the claims. See Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. See LaCava, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim. See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

Homer fails to account for the delay in pursuing his state court remedies or for his delinquency in seeking relief in federal court. And there is no indication that extraordinary circumstances obstructed his pursuit of post-conviction relief in either forum. Hence, equitable tolling of the AEDPA statute of limitations is not warranted in this case.

### 3. Fundamental Miscarriage of Justice

This exception "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404 (1993). It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." Schlup v. Delo, 513 U.S. 298, 324 (1995). The Supreme Court has applied it "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " McQuiggin v. Perkins, 569 U.S. 383, 395 (2013) (alteration in original) (quoting Schlup, 513 U.S. at 329). "Put differently, the exception is only available when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" Coleman v. Greene, 845 F.3d 73, 76 (3d Cir. 2017), citing McQuiggan at 401, (quoting Schlup, 513 U.S. at 316). In Schlup, the Supreme Court emphasized that "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a

barred claim." 513 U.S. at 316. While a petitioner alleging actual innocence need not

prove diligence in order to assert a claim of actual innocence, "[u]nexplained delay in

presenting new evidence bears on the determination whether the petitioner has made the

requisite showing." Id. at 1935; see also Schlup, 513 U.S. at 332 ("A court may consider

how the timing of the submission and the likely credibility of [a petitioner's] affiants bear

on the probable reliability of ... evidence [of actual innocence.]").

An actual innocence claim must be based on "new reliable evidence—whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence—that was not presented at trial." Schlup, 513 U.S. at 324. Evidence is "new"

under the Schlup standard only if it was not available at the time of trial and could not

have been discovered earlier through the exercise of due diligence, except in situations

where the evidence was not discovered due to the ineffectiveness of counsel. See Houck

v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010).

The exception, though narrow, may overcome procedural default rules such as the

timing requirements of 28 U.S.C. § 2244(d)(1). See McQuiggin, 569 U.S. at 392 (2013)

(citing cases). Homer seeks to invoke the fundamental miscarriage of justice to

overcome the untimeliness of his petition based on "new" evidence. Attached to

Homer's petition is a supplemental Incident Report prepared by Detective Todd A.

Johnson ("Johnson") of the Dauphin County Criminal Investigation Division during the

course of the investigation into the death of Michael Snyder. (Doc. 1, pp. 19, 20). He

states that he and Detective Dickerson picked up Adam Homer on June 5, 2012, from the

Dauphin County Prison and transported him to the Dauphin County Criminal

Investigation for an interview concerning the death of Michael Snyder. (Id. at 19, 20). Johnson states that he informed Homer that his girlfriend, Leslie Young ("Young"), told the detectives that she dropped him off prior to the shooting and picked him up after the shooting. Homer indicated that he did not believe Johnson. Johnson then played a recording of Young's interview. Homer suspected that the recording had been altered and asked to speak to Young. Johnson then reported that he "contacted Young and allowed Homer to speak with her. Right away Homer told Young why you would to this to me. Young replied I just wanted to get out of there so I lied to the police. Homer turned to me and said I told you I didn't do it. I was not even there. The conversation was ended with Young…" (Id. at 20)

Also attached to the petition is a statement signed by Young on June 5, 2012, setting forth the following information:

> I, Leslie Young, am writing this statement of sound mind. Today, June 5, 2012, I was asked to meet with Det. Robert Appleby about the situation at the camp ground in the Lower Swatara area. i [sic] have been very forth coming with any and all information that I have been asked for. I have told the Detectives in this case that my boyfriend, Adam Homer, was with me the entire day of the 30th and 31st. I NEVER dropped Adam off at our [sic] near the camp ground for any reason or picked him back up as I told the Detective after being badgered and told that I was lying in order to protect Adam. I have spoken with Attorney John Glace. He is who will be representing me in this situation. I am leaving this statement with Adam Homers' [sic], Aunt Beth Arnett to ensure that my true words are heard. I apologize to the Detectives and especially to Adam for telling the lie that I had dropped you off and picked you back up. I felt that I had no other choice but to tell them some type of story in order for me to get out of the police station. I was being threatened by Det. Appleby that either I talked or I was going to be arrested. He told me that Adam GSR test came back positive. I did not see proof of this statement. I was only told this verbally. After, Det Johnson met with Adam and I was called. It was realized that I lied to the detectives... Adam Homer has not threatened me in any way

concerning this statement. He does not even know that I have written this statement and am leaving it in the possession/via computer with his Aunt Beth Arnett.

Adam, I know you are very angry with me for saying such a thing. Knowing that your [sic] are innocent of harming or shooting anyone that night. I believe in time that you will understand.

John Glace 717-350-1603

Sincerely, Leslie Young.

(Doc. 1, p. 17). Homer states he did not receive the statement until April of 2017.

He also indicates that Young "on numerous occasions gave several versions to the police of the incident in question. Leslie Young gave a statement to the police on June 3rd, 2012, on August 8th, 2012 and on March 15th, 2013. In each of these statements to the police she gave different versions of the events in question until finally on June 5th 2012 Leslie Young admitted to the truth of the events resulting in Petitioner's trial and conviction. (Doc. 26, p. 3) (emphasis in original omitted).

Attached to his "Supplemental Evidentiary Materials" filing (Doc. 26), is what appears to be detective notes. The note dated 7/5/12 states "Homer on this occasion did begin to suggest to me that he believed that his father Ralph may be responsible for the murder, but could offer no evidence or reason to support it. This is also around the same time Leslie [Young] began to suggest that Ralph might be responsible for the murder." (Doc. 26, p. 8).

In asserting his claim of actual innocence based on new evidence, Homer exclusively relies on the June 5, 2012 statement of Young. Therein, Young states she lied to detectives about Homer's whereabouts at the time of the murder. Homer's claim

is without merit. First, the evidence is not new. The statement authored by Young is dated June 5, 2012, and, according to the statement itself, was given to Homer's aunt by Young and therefore presumably available to Homer. In addition, according to Respondents, the statement was provided to Homer contemporaneous with its execution. Alternatively, even if Homer did not become aware of the actual statement until April 17, 2017, by his own admission, he was aware of the content of the statement contemporaneously with its execution. Specifically, Respondents argue in the Response that "Homer confronted Young via telephone in the detectives' presence regarding her lying , and Young admitted to lying at that time, in front of Homer and detectives." (Doc. 9, p. 4). Homer concedes that he spoke to Young and that the conversation took place as represented by Respondents. ((Doc. 10, p. 6). The proffered evidence that Young had lied is not new and it is clear that it was known to Homer at the time he entered his guilty plea on October 8, 2013.

Second, Young's statement, again by Homer's own admission, is unreliable. In his supplement, Homer indicates that Young is a completely unreliable witness in that "on numerous occasions [she] gave several versions to the police of the incident in question. Leslie Young gave a statement to the police on June 3rd, 2012, on August 8th, 2012 and on March 15th, 2013. In each of these statements to the police she gave different versions of the events in question until finally on June 5th 2012, [she] admitted to the truth of the events resulting in Petitioner's trial and conviction." (Doc. 26, p. 3). Young's June 5, 2012, statement does not constitute evidence of innocence so strong that the court cannot have confidence in the outcome of the proceedings

Homer fails to present a claim of actual innocence.

### III.    Conclusion

Based on the foregoing, the petition will be dismissed as untimely.

### IV.    <u>Certificate of appealability</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. Accordingly, no COA will issue.

An appropriate order will issue.

**BY THE COURT:**


**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**


**Dated:** August  16_, 2018